# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BREE N. ELICK, Individually and on )
behalf of the Estate of JON S. GRALA, )
BRENDA GRALA, TRASA BARRETO, )
And CAPREE GRALA, )
    Plaintiffs, )
     )
  v. )
     ) C.A. NO. N21C-03-046 DJB
CHRISTIANA CARE HEALTH )
SERVICES, INC., THOMAS K. EVANS, )
M.D., and VASCULAR SPECIALISTS, )
P.A., d/b/a VASCULAR SPECIALISTS OF )
DELAWARE, PA, )
    Defendants. )

Submitted: September 22, 2023
Decided: November 7, 2023

## <u>ORDER</u>

*Upon Plaintiff's Motion in Limine Regarding Statistical Risk of Pulmonary Embolism -* **GRANTED.**

1.    In this medical malpractice action Plaintiffs allege negligence of Dr. Thomas K. Evans ("Dr. Evans") and his co-defendants stemming from the failure to treat a deep vein thrombosis ("DVT"), which is alleged to have resulted in a fatal pulmonary embolism for Jon S. Grala ("Grala").

2.    The Complaint alleges that Grala was a patient of Dr. Evans, a vascular surgeon with Defendant Vascular Specialists of Delaware, P.A., while performing

services for Defendant Christiana Care Health Services at Christiana Hospital.[1]  On August 11, 2019, while under Defendants' care, Grala was diagnosed with both a pseudoaneurysm in his right common femoral artery and a large deep vein thrombosis, which was adjacent to the pseudoaneurysm.  Dr. Evans decided to treat the pseudoaneurysm prior to treating the DVT and on August 12, 2019, performed a thrombin injection as Grala's initial treatment.  Dr. Evan's plan was to treat the DVT with anticoagulation treatment the next day, however, Grala collapsed and died at 1:31 a.m. on the morning of August 13 prior to treatment.[2]

3.      Numerous pre-trial motions have been heard and decided.[3]  Before the Court now is Plaintiffs' motion *in limine* to exclude defense expert, Dr. Caitlin W. Hicks, from testifying that the statistical probability of developing a fatal pulmonary embolism within the first 48 hours of treatment was less than 1%.  Defendants jointly opposed.[4]  A *Daubert* hearing was held at which testimony was taken by Dr. Hicks.[5] Following the hearing, each party was given the opportunity to provide supplemental submissions.

3.      Dr. Hicks is the Director of Clinical Research at Johns Hopkins

---

[1] *Elick, et. al. v. Christiana Care Health Services, Inc., et. al.*, N21C-03-046 DJB, D.I. 1.
[2] *Id.*
[3] D.I. 200.
[4] D.I. 208, 221, 229.
[5] D.I. 222.

Department of Surgery. She additionally is an associate professor in the epidemiology division at Johns Hopkins Bloomberg School of Public Health and is co-faculty at the Welch Center, a research center. She holds a Masters of Science in clinical research from the Cleveland Clinic Lerner College of Medicine and has received training on analyzing and applying scientific data in a clinical setting and has her own personal experience doing the same. She has been published and been subjected to peer-review.[6] It is without question that Dr. Hicks has the sufficient knowledge base and qualifications to testify. Plaintiffs are not challenging her qualifications. In their motion, Plaintiffs seek only to exclude the portion of Dr. Hicks' testimony that gives the statistical risk of an untreated DVT in causing a pulmonary embolism is less than 1%.[7]

4. Plaintiffs challenge this aspect of Dr. Hicks' testimony under both Delaware Rules of Evidence 402, 403, 702, *Daubert v. Merrell Down Pharmaceuticals, Inc.*[8] Specifically, Plaintiffs argue that the two articles in support of Dr. Hick's statistical conclusion are not reliable, as Grala was never treated for his DVT, unlike the patients studied in both articles upon which Dr. Hicks relies.

5. One study upon which Dr. Hicks relies is by Silvy Laporte, Phd., entitled

[6] D.I. 222, Trans. At 7-8.
[7] D.I. 203, Pl. Mtn. at ¶4.
[8] 509 U.S. 579 (1993); Pl. Mtn. at ¶5.

*Clinical Predictors for Fatal Pulmonary Embolism in 15, 520 Patients with Venous Thromboembolism*, which was published in April, 2008.[9] The second study upon which Dr. Hicks relies is entitled, *Thirty-day Outcomes in Patients with Proximal Deep Vein Thrombosis Who Discontinued Anticoagulant Therapy Prematurely*, by J.A. Nieto,[10] and was published in May, 2020. In addition to these articles, Dr. Hicks relies upon a calculation given to her from the RIETC registry web page. The RIETC registry is a database registry of over a hundred thousand patients in which their data is inputted and used by clinicians to understand the risk factors for DVT and pulmonary embolisms in a clinical setting. At the hearing, it was explained by Dr. Hicks that patient information can be input and the web-based site completes a risk calculation based upon the information of other patients in the registry.[11]

6.　　Plaintiff argues that because the Nieto study was concluded in 2020, it is irrelevant as to the standard of care placed upon Dr. Evans in 2019 when treating Grala. Plaintiffs argue this testimony is violative of Delaware Rules of Evidence 402 and 403, as irrelevant and any probative value is far outweighed by its prejudicial effect upon the jury. In support of their D.R.E. 403 argument, Plaintiffs cite to the

---

[9] Silvy Laporte, Phd., *Clinical Predictors for Fatal Pulmonary Embolism in 15, 520 Patients with Venous Thromboembolism*, Circulation, Apr. 1, 2008; Pl. Mtn. Ex. D.
[10] J.A. Nieto, *Thirty-day Outcomes in Patients with Proximal Deep Vein Thrombosis Who Discontinued Anticoagulant Therapy Prematurely*, Thromb. Res., May 2020; Plt. Mtn. Ex. E.
[11] D.I. 222. Tr. Hring. at pp. 9, 11, 19-21.

Delaware Supreme Court decision in *Timblin v. Kent General Hospital*.[12]

7.      Defendants' opposition argues that Dr. Hicks' calculation of risk is sound and is properly based upon the two cited peer-reviewed studies as well as the RIETC registry.[13]     Defendants argue that it is permissible for Dr. Hicks to use her independent judgment and interpretation of others research in reaching her statistical conclusion.   Further, Defendants argue this testimony would aid the jury in its understanding of the issues presented and the decision that was to be made by Dr. Evans.[14]

6.      Plaintiffs' argument that neither study cited by Dr. Hicks involves patients who been wholly untreated for DVT is relevant, but not dispositive.  There will certainly never be a study for every potential medical situation presented.   It is certainly plausible and proper, as Defendants argue, for an expert to use their own knowledge base to rely on similar studies in applying them to various situations presented.  This is factor is considered by the Court, but again, is not dispositive.

7.      The Nieto study is the most relevant to Grala's case, however, since it studies patients who have discontinued DVT treatment, which is akin to not patients

---

[12] 640 A.2d 1021 (Del. 1994).

[13] D.I. 208, 221, 229.

[14] Def. Opp. To Pl. Suppl. Subm. At ¶4, D.I. 229.  Defendants argue that Plaintiffs' reliance on the *Scottoline v. Women First, LLC*, 2023 WL 2325701 (Del. Super. Ct. 2023) is misplaced.  The Court agrees that *Scottoline* dealt with a different challenge to expert testimony that is not presented here and is not determinative of this decision.

who have not been treated, per Dr. Hicks. However, it is dispositive that this study was published after Grala's death and is therefore not applicable to the standard of governing Dr. Evans. In fact, not only was this study published in 2020, but Dr. Hicks – a research clinician – was not even aware of this study until 2021.[15]

7.     Given this, the Nieto study is not relevant to the applicable standard of care. Therefore, the basis for any statistical conclusion stemming from this study is irrelevant under a D.R.E. 402 analysis. Even assuming this study and basis of the statistical evidence holds relevance, it cannot survive a D.R.E. 403 analysis, as its probative value is outweighed by its prejudicial effect. Consistent with *Timblin*, the prejudicial impact of the statistical probability evidence sought to be presented is great.[16]

8.     Like in *Timblin*, the introduction of this purported statistical evidence poses a danger of unfair prejudice and jury confusion. This statistical evidence purported by Defendants is not being offered to rebut the causation nexus, which can potentially be relevant, but is being offered to show conformity with the standard of care. This is improper.[17] The proffered statistic invites the inference that because there is less than 1% risk of a fatal pulmonary embolism developing from an untreated

---

[15] Hrg. Tr. P. 73.
[16] *Timbin*, 640 A.2d at 1025.
[17] *Id.* at 1024.

DVT, the standard of care was followed.

9.  Therefore, Dr. Hicks may testify that, even untreated, the risk of Grala developing a pulmonary embolism was low during the relevant time frame, however, her testimony may not include the statistical probability that there was less than 1% chance of a pulmonary embolism resulting from an untreated DVT.

**IT SO ORDERED** this 7th day of October, 2023.

_____
Danielle J. Brennan, Judge

Cc:  All parties via Lexis File&Serve